# EXHIBIT A

## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.  1984CV01198

Doris Picardi_____, PLAINTIFF(S),

v.

Media News Group, Inc. , DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO MNG-BH Acquisition LLC_____. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior   Court. YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your signed original response with the Clerk's Office for Civil Business, Suffolk___ Court, Superior 3 Pemberton Square,_____ (address), by mail or in person, AND Boston, MA 02108
    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Berluti McLaughlin & Kutchin, 44 School Street, Boston, MA 02108

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

A true copy Attest:
5 19 19    Deputy Sheriff Suffolk County

4.  Legal Assistance. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  Required information on all filings: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____
_____
_____

Dated: _____, 20____          Signature: _____

N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                   SUPERIOR COURT DEPT.
                                               CIVIL ACTION NO.:

DORIS PICARDI,

    Plaintiff,                          **COMPLAINT AND DEMAND**
                                               **FOR TRIAL BY JURY**
v.


MEDIANEWS GROUP, INC.
and MNG-BH ACQUISITION LLC

    Defendants

### PARTIES

1.     Doris Picardi is an individual residing at 38 Winthrop Street, Everett, Massachusetts, County of Middlesex.

2.     Defendant MediaNews Group, Inc. is a foreign corporation organized under the laws of Delaware, with a principal place of business at 101 W Colfax Avenue, Suite 1100, Denver, Colorado.

3.     Defendant MNG-BH Acquisition LLC is a foreign limited liability company organized under the laws of Delaware, with a principal place of business at 101 W Colfax Avenue, Suite 1100, Denver, Colorado, and a principal office in the Commonwealth located at 451 D Street, 6th Floor, Boston, Massachusetts, County of Suffolk. Defendants MediaNews Group, Inc. and MNG-BH Acquisition LLC are collectively referred to herein as "MNG."

4.     On March 19, 2018, MediaNews Group, Inc., through its wholly owned subsidiary, MNG-BH Acquisition LLC, purchased the Boston Herald's assets out of bankruptcy.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper because the defendants have sufficient contacts with the Commonwealth of Massachusetts based upon their ownership and operation of the Boston Herald, and the amount in controversy exceeds $25,000.

6.      Venue is proper because the unlawful conduct took place at the Boston Herald's offices, which were located at 451 D Street, 6th Floor, Boston, Massachusetts, County of Suffolk, at the time.

7.      Ms. Picardi initially filed her discrimination claims with the Massachusetts Commission Against Discrimination, on December 17, 2018, MCAD Docket #: 18BEM03630, satisfying the 90-day waiting period under M.G.L. c. 151B, § 9.  Likewise, Ms. Picardi sought and obtained a right to sue letter from the Massachusetts Attorney General before filing her wage and hour claims.

## FACTS

### MediaNews Group, Inc. Acquires the Boston Herald and Extends Ms. Picardi an Employment Offer

8.      Ms. Picardi is a forty-nine-year-old single mother of two who worked at the Boston Herald for over thirty years.  She started with the Boston Herald in 1988 as an advertising assistant and – because of her strong performance – rose up the ladder.  In May 2017, she was promoted to Display Advertising Director.

9.      Ms. Picardi has solely supported her two children throughout their lives and continues to do so while they pursue degrees at the College of the Holy Cross in Massachusetts. During her time at the Boston Herald, Ms. Picardi also worked weeknights and weekends in retail to make ends meet.

2

10.     In March 2018, MNG purchased the bankrupt Boston Herald and assumed control of the newspaper. About 73% of the Boston Herald's workforce obtained employment with MNG. On March 8, 2018, MNG extended Ms. Picardi an offer to continue serving as Display Advertising Director on an at-will basis, at an annual salary of $95,000. Ms. Picardi accepted that offer.

11.     On her first day at MNG, Ms. Picardi was assigned duties extending far beyond those associated with the Display Advertising Director position. Specifically, MNG delegated the duties of the Vice President of Retail and National Advertising and the Digital Advertising Sales Manager to Ms. Picardi. The two employees serving in these roles at the Boston Herald were not offered employment at MNG. Before accepting her job at MNG, Ms. Picardi was not informed that the Display Advertising Director would be responsible for the two additional roles.

### Ms. Picardi is Promised a MNG Commission Plan

12.     At MNG, Ms. Picardi worked directly under Edward Woods, a Vice President and Chief Revenue Officer at the company. In April 2018, Mr. Woods raised concerns about Ms. Picardi's second job. Although there was no conflict between the retail sales position and her advertising director position, Mr. Woods felt that Ms. Picardi's second job would prevent her from giving 100% commitment to MNG.

13.     Ms. Picardi agreed to limit the hours she would work at her second job based upon MNG's promise that it would provide her with a "lucrative" incentive plan. On April 10, 2018, Ms. Picardi informed Mr. Woods she had significantly altered her schedule at her second job. She stated that she had some reservations about doing so because the second job was always necessary to support her children. After hearing Ms. Picardi's concerns, Mr. Woods reiterated that she would be well compensated by MNG. He said that he had had a "lucrative" career with

3

MNG and that once Ms. Picardi received her commission plan from MNG, she too would have lucrative employment. Mr. Woods even congratulated Ms. Picardi for deciding to limit her second job, indicating that limiting her second job would be beneficial to her MNG employment.

14.     Based upon Mr. Woods' repeated assurances of lucrative employment, Ms. Picardi embraced her expanded role at MNG and took on more responsibility. In May 2018, MNG lost three employees serving in major positions: Joseph LoPilato, Classified Automotive Manager; Dianne Chin, Director of Marketing and Promotion; and Beth O'Grady, Classified Manager. Ms. Picardi took over those roles. Each former employee's emails and phone calls were forwarded to Ms. Picardi, and she assumed responsibility for their work obligations and for supervising the employees that had reported to them. This added significantly to her job responsibilities.

### Ms. Picardi Achieves the June, July, and August Budgets

15.     As a director, Ms. Picardi was responsible for setting the salesperson's monthly goals; she did this using a budget provided by MNG. Naturally, as Ms. Picardi's role at MNG expanded, the budget for which she was responsible also expanded. At the Boston Herald, Ms. Picardi was responsible for an approximately $120,000 budget; at MNG, she was responsible for a budget ranging from $680,000 to close to $800,000.

16.     Although MNG developed and used its own monthly budgets, the company continued using the Boston Herald's incentive pay structure to compensate employees who hit performance goals. In other words, if former Boston Herald employees who joined MNG hit their goals under MNG's budget, MNG would pay them the incentive payments to which they were entitled under the Boston Herald's incentive plan.

4

17.     MNG gave Ms. Picardi monthly budgets for June, July, and August. She used those budgets to assign goals for the staff she oversaw, and those goals were ultimately achieved. Under MNG's incentive policy, the salespeople underneath Ms. Picardi who hit their assigned goals received incentive payments according to the Boston Herald plan.

18.     Ms. Picardi's incentive pay under the Boston Herald's plan was obsolete because it was based on her responsibilities before MNG took over and delegated additional duties to her, duties including retail and national advertising, classifieds, and digital sales. These were separate roles at the Boston Herald and each position was assigned individual incentive payouts under the Boston Herald incentive plan. Ms. Picardi expected that she would receive the "lucrative" incentive pay she was promised for achieving the monthly budgets. She never received any incentive plan from MNG at all.

19.     Although MNG acknowledged that Ms. Picardi assumed additional roles, the company refused to increase her base salary or Boston Herald incentive pay and refused to grant her a MNG incentive plan. In fact, when Ms. Picardi inquired about her incentive pay for June, MNG said she would only receive an incentive payment if she had achieved the Boston Herald's monthly budget—not the MNG budget she had been provided with and achieved. MNG also told Ms. Picardi that she would not receive an incentive payment above that which she would have received at the Boston Herald, despite the fact that Ms. Picardi's responsibilities expanded when MNG took control of the Boston Herald.

20.     In sum, MNG enticed Ms. Picardi to alter her life and commit nearly all her time to the company by repeatedly assuring her that she would be lucratively compensated. Ms. Picardi achieved MNG's monthly budgets, even after being delegated excessive responsibilities.

5

Despite all that, MNG refused to provide her the lucrative incentive plan promised; instead, the company selectively applied the Boston Herald incentive plan to Ms. Picardi's detriment.

### Defendants Discriminate Against Ms. Picardi Based on Gender

21.     MNG's handling of Ms. Picardi's incentive pay stands in stark contrast to its handling of male employee's incentive pay.  In August 2018, MNG hired a new sales management team—all of whom were male—and MNG gave these new employees Management by Objectives incentive plans (MBOs).  These MBOs were so enticing that the male employees bragged at company meetings about how much money they were going to make.  This was particularly unsettling for Ms. Picardi—a female who had been with MNG for months—because she never received her promised commission plan.

22.     MNG consistently held Ms. Picardi to a different standard than her male counterparts.  For example, MNG routinely compared Ms. Picardi to a male director at the Lowell Sun, a paper with a much lower circulation and budget than the Boston Herald's.  Despite her increased responsibilities, Ms. Picardi never received a MNG incentive plan, while the Lowell Sun director had one.  Similarly, MNG chose to overlook a male employee's conflict of interest and allowed that employee to continue his second job while working for MNG.  In contrast, as noted above, Ms. Picardi was forced to limit her second job because of MNG's concerns that she could not handle two jobs – even though Ms. Picardi's second job did not create a conflict of interest.  Mr. Woods also expected Ms. Picardi to handle tasks that he considered to be beneath male employees – even those subordinate to Ms. Picardi.  In one instance, when she inquired about having circulation personnel clean a storage area, Mr. Woods told her to do it herself; when Ms. Picardi had two male employees begin cleaning the room, Mr. Woods intervened and told circulation personnel to take over.

**Defendants Retaliate Against Ms. Picardi for Raising Issues**
**Related to Wages, Commissions, and Discrimination**

23.     On July 27, 2018, Ms. Picardi complained to human resources about the gender

discrimination she faced and MNG's failure to pay her the incentive payments outlined in the

Boston Herald's incentive plan. MNG dismissed her concerns without investigating them.

24.     On August 14, 2018, not even a month after issuing her complaint to human

resources, Ms. Picardi was informed that MNG was eliminating her position. MNG replaced her

with four new employees, underscoring the fact that Ms. Picardi had been performing the work

of four people. All four employees who replaced Ms. Picardi were male. Adding insult to injury,

Ms. Picardi was tasked with training her replacements, a task made difficult by the gender

discrimination to which Ms. Picardi had been subjected.

**COUNT I**
**(Violations of M.G.L. c. 151B, §4(1) – Gender Discrimination)**

25.     Ms. Picardi restates and realleges paragraphs 1-24 of this Complaint as if set forth

fully herein.

26.     Ms. Picardi, who is female, was at all relevant times an employee of MNG.

27.     During her employment, Ms. Picardi suffered adverse employment action,

including without limitation, being forced to limit her second job, being misled about receiving a

MNG commission plan, being delegated additional duties without any increase in compensation,

and ultimately, her termination as an employee of MNG.

28.     MNG bore discriminatory animus against Ms. Picardi, and their aforementioned

actions were motivated by that animus. This animus is illustrated by the fact that MNG held

male employees to different, more lenient standards than Ms. Picardi, and ultimately replaced her

7

with male employees who were given high paying incentive plans that were not provided to Ms. Picardi.

29.     Ms. Picardi has been harmed by this conduct.

## COUNT II
### (Violations of M.G.L. c. 151B, §4(4) – Retaliation)

30.     Ms. Picardi restates and realleges paragraphs 1-24 of this Complaint as if set forth fully herein.

31.     Ms. Picardi reasonably and in good faith believed that the adverse employment actions described above constitute wrongful discrimination based on gender.

32.     Ms. Picardi raised these incidents of gender discrimination through her correspondence with human resources.

33.     As a direct result of Ms. Picardi's opposition to, and reporting of, these discriminatory practices, MNG retaliated against her, including by terminating her employment and requiring her to train her male replacements.

34.     Retaliation was a determinative factor in the decision to take these adverse actions against her.

35.     Ms. Picardi has been harmed by this conduct.

## COUNT III
### (Violations of M.G.L. c. 149, § 148 – Wage Act)

36.     Ms. Picardi restates and realleges paragraphs 1-24 of this Complaint as if set forth fully herein.

37.     Ms. Picardi, who was at all relevant times an employee of MNG, satisfied the budgets assigned to her by MNG for the months of June, July, and August, which entitled her to commissions under MNG's incentive pay structure.

8

38.     The commissions owed are arithmetically determinable and all contingencies occurred while Ms. Picardi was employed (i.e. meeting the June, July, and August budgets assigned to her).

39.     Ms. Picardi satisfied the contingency related to her commission for the months of June, July, and August; however, when Ms. Picardi was ultimately paid her commissions, she received significantly less than that which she was owed for the work she performed. Specifically, though she assumed responsibility for a $700,000+ monthly sales budget, Ms. Picardi only received bonuses based upon a $150,000 monthly sales budget. As a result, Ms. Picardi only received approximately 21% of the commissions due to her.

40.     Defendant's failure to pay the proper amount of commissions constitutes a violation of M.G.L. c. 149, § 148.

41.     As a direct result of these statutory violations, Ms. Picardi suffered lost wages and other damages in an amount to be determined at trial, including treble damages, litigation costs and attorneys' fees.

### COUNT IV
### (Violations of M.G.L. c. 149, § 148A – Retaliation)

42.     Ms. Picardi restates and realleges paragraphs 1-24 of this Complaint as if set forth fully herein.

43.     Ms. Picardi raised her concerns about unpaid commissions and gender discrimination internally, including with Mr. Woods and with Human Resources, and through her counsel in her October 5, 2018 demand letter.

44.     As a direct result of Ms. Picardi reporting her concerns, MNG retaliated against her, including without limitation, by forcing her to train her replacements and ultimately terminating her employment.

9

45. Retaliation was a determinative factor in the decision to terminate her employment.

46. Defendant's actions constitute a violation of M.G.L. c. 149, § 148A.

47. As a direct result of these statutory violations, Ms. Picardi suffered lost wages and other damages in an amount to be determined at trial, including treble damages, litigation costs and attorneys' fees.

## COUNT V
### (Violations of M.G.L. c. 149, § 105A – Unequal Pay)

48. Ms. Picardi restates and realleges paragraphs 1-24 of this Complaint as if set forth fully herein.

49. Ms. Picardi, who is female, was paid less than male employees who performed comparable work. For example, she was not offered a MNG incentive plan, while male employees performing sales roles that required substantially similar skill, effort and responsibility were offered such plans.

50. This disparity in compensation was not based upon permissible considerations such as differences in seniority, job performance, education, or training.

51. Ms. Picardi has been harmed by this conduct.

## COUNT VI
### (Breach of Contract)

52. Ms. Picardi restates and realleges paragraphs 1-24 of this Complaint as if set forth fully herein.

53. There is a valid and binding employment contract between MNG and Ms. Picardi, which includes, without limitation, certain commission pay incentives.

10

54.     As set forth herein, Ms. Picardi is entitled to full payment of certain commissions earned pursuant to her employment contract. MNG failed to pay the full amount of those commissions.

55.     MNG's failure to pay those commissions in full constitutes a breach of the employment contract between Ms. Picardi and MNG, including, without limitation, a breach of the implied covenant of good faith and fair dealing.

56.     As a direct result of these breaches of contract, Ms. Picardi has suffered damages in an amount to be determined at trial.

## COUNT VII
## (Quantum Meruit)

57.     Ms. Picardi restates and realleges paragraphs 1-24 of this complaint as if set forth fully herein.

58.     MNG made a promise to grant Ms. Picardi a "lucrative" commission plan, as evidenced by Mr. Woods statements to Ms. Picardi on April 10, 2018.

59.     In reliance upon promises that the commission plan was binding, or in the alternative that the MNG would perform, Plaintiff agreed to take on substantially more duties than those covered by her salary, including the additional roles Ms. Picardi took over, and extended her workday to 12 hours for the months of April through August.

60.     In reliance upon promises that the commission plan was binding, or in the alternative that the MNG would perform, Plaintiff worked diligently to meet, and did in fact meet, the budgets assigned to her for the months of June, July, and August.

11

61.    By refusing to give Ms. Picardi a commission plan and subsequently terminating her employment, MNG has unfairly benefited from Ms. Picardi's work at her expense.

Dated: April 16, 2018                              Respectfully submitted,

                                                   **DORIS PICARDI**
                                                   By her attorney,

                                                   Robert R. Berluti (BBO #039960)
                                                   Jessica A. Mahon Scoles (BBO 569155)
                                                   **BERLUTI MCLAUGHLIN & KUTCHIN LLP**
                                                   44 School Street, 9th Floor
                                                   Boston, MA 02108
                                                   Tel.: 617-557-3030
                                                   Fax: 617-557-2939
                                                   rberluti@bmklegal.com
                                                   jmahonscoles@bmklegal.com

12